Case number 22-3069, United States of America v. James Hutchings, Jr., also known as James Hunter Hutchings II, appellant. Mr. Anzina, for the appellant. Mr. Lenners, for the appellate. Good morning, Your Honors. May it please the Court, I'm Paul Anzina, representing the appellant in this case, James Hutchings, Jr. When law enforcement agents arrested Linwood Thorne in January 2019, they found him alone in an apartment with four telephones, four cell phones. And the agents sought a warrant to search the phones to see what was inside them, what their contents were. And they told the magistrate judge there's probable cause to believe there would be evidence of crime in these phones. Because, first of all, Mr. Thorne was a drug dealer. He had already been indicted for drug charges. Second, drug dealers use phones in conducting their activities. Therefore, any phone that Mr. Thorne used was likely to contain evidence of his alleged illegal acts. And finally, the fact that he was alone in the apartment with these phones indicated that it was likely that he used these phones. Very straightforward, very simple. But the probable cause analysis does not end with the issuance of the warrant. In fact, the execution of the warrant must also meet the requirements of the Fourth Amendment. When the phones were cracked here, when the password was deciphered and they were opened up and their contents revealed, the agents received a 36,000-page report containing everything that was in the phones, messages, photographs, everything. And on the very first page of that, the very first thing the agents looked at was the entry owner's name equals James iPhone. Now, the agents knew that Thorne was not James. James was not his name. They knew also that someone named James had been in the apartment immediately before Thorne was arrested because they had stopped James Hutchings coming out of the apartment on their way in. And they had asked him about who was in the apartment. And he and the man he was with told the agents that Thorne was in the apartment. And the agents had no reason to believe that Mr. Hutchings was involved in any criminal activity at that point. So now they knew that he had been in the apartment immediately before. So the warrant said, though, that it covered phones that were associated with Thorne. It didn't have to be owned by Thorne. No, it didn't have to be owned by him. But the association here, the only association was that it was found in the apartment with Thorne. But why isn't that enough of an association to bring this within the warrant? Well, here's the problem. If the agents had come a few minutes earlier and they had found Mr. Hutchings in the apartment with Mr. Thorne, they would have been required to disclose that in the application for the warrant, particularly. But that didn't happen. I guess. No, it didn't happen. What are you expecting law enforcement agents to do? They have a warrant that says you can search phones associated with Lynn with Thorne. They find this phone in the apartment with Thorne. Nobody else is there but Thorne. It's by a pile of clothes that Thorne admits are his clothes. I don't understand why this is not within the. Well, that's exactly the point you made. You said nobody else is there in the apartment with Thorne. But the agents knew that someone named James, about whom they had no reason to believe was involved in any illegal activity, had been in the apartment just minutes before. I guess I can't get around the fact that this warrant says if it's associated with Thorne, you can search it. And this phone was found with Thorne. Why is it not associated with Thorne? It's associated with Thorne in the sense that it was found with him. Aren't you requiring law enforcement officers to overthink this? I have a warrant that says search the phone if it's associated with Thorne. And they're searching. But they know that the only association is that it was found in the apartment with Thorne. It seems a little broader than the facts here, where it was found in the apartment with him. Nobody else was there. It was close to him. It was, in fact, on a pile of his clothing. And he was at that time fleeing from law enforcement, which would raise a reasonable inference that he's not broadly socializing with people who aren't part of his team or to be trusted to keep his whereabouts confidential. So it seems like there's quite a bit more here than somebody who's under probable cause of drug dealing found in a residence where there are other phones somewhere there. Well, Your Honor, I think you're reading into this something that isn't there. And that is the possibility or the likelihood that Mr. Hutchings was involved in some kind of illegal activity. Imagine if instead of Mr. Hutchings coming out of the apartment, it had been a plumber. And the plumber was wearing a shirt that said Ace Plumbing Services. And when they opened the phone, the phone said Ace Plumbing Services. That's exactly the situation you have here. Someone was in the apartment. Now the phone suggests that that person owned the phone and left it behind. And that person, there is no reason to believe that person was involved in any criminal activity. So it seems to me that you're suggesting that law enforcement officers who are executing a warrant need to be thinking about whether probable cause is still met as they're doing that. That seems very disconnected from the way things work in the real world, because oftentimes the officers executing a warrant are different from the one who swore out the affidavit and got the warrant. And it seems to me that the whole purpose of the warrant is to remove that decision about probable cause away from the officers who are engaged in the competitive enterprise of ferreting out crime and putting in the hands of a magistrate judge or a judge, a neutrally detached magistrate that makes the probable cause finding. And that's what happened in this case. The judge or the magistrate judge signed the warrant. Now the officers just go execute it. That's what they did. And even if you were correct that there was a problem, they can rely on that in good faith. Well, the problem with two problems. One is agents do have to be thinking about whether there's probable cause, even if there's a warrant, because as the authority for that garrison, that's a factual situation. That's somewhat different here. Here, a magistrate judge says you can search this particular phone.  In garrison, there was a warrant that said you can search the apartment on the third floor. There turned out to be two. And garrison says that as long as they thought there was only one, that was okay. It was once they realized that there was two, there was an issue. So that's distinguishable. But what garrison said was you can search the second floor of this building. Right. And that's what they searched. But when they got there, they found out the second floor of the building was divided into two apartments. My recollection of garrison was that once they, as long as the police knew or thought that they were actually within the bounds of the warrant, they were fine. But once they realized that there were two, that's when they were put on notice. But in this case, there's an actual warrant that says you can search this particular phone. There was never a time at which the officers thought that the warrant didn't apply to this phone. So that's why it's different. But the agents knew what they had told the magistrate judge about the phone was incorrect. That's what I'm trying to say. In most cases, the agents who are executing the search don't know what was in the affidavit. They're just executing the search. Many search warrants search this whole house. One agent goes, gets the warrant, and then a team of people, 20 people, are searching the house. And you're saying that every single one of them needs to be thinking about probable cause as they're searching. Well, in this case, the agents did know because Agent Miliara testified. But you're asking us to make a holding that's going to apply to all search warrants. And that just seems really impractical. Well, I think in any case where an agent knows that the probable cause showing they had made was incorrect, I don't think that's too big a burden because this agent said he knew when he looked at that first page. He knew immediately that it was reasonable that this phone did not belong to Thorne. But isn't that different than knowing that the phone did not have information that would incriminate Thorne? The only reason why the magistrate judge allowed the search of the phone was because she or he felt that the phone was in his possession. So, therefore, it was likely he used it. But now we have different information. We have information saying that the phone was in his possession because the person who apparently owned it had just left his apartment and apparently left it behind. Is the inference of the warrant affidavit and the warrant that it's likely that he himself used it, or rather that because it was associated with him, perhaps through his associates, that they might have used it in communicating with him or about the enterprise? Well, that's problematic, too, because let's play that out. That's what the district court held. But let's play that out. What that means is that any phone that Mr. Thorne had been in contact with, there would be probable cause to search that phone. Well, there's a lot more than that he had been in contact with. But I take your point. In this case, there is no claim that the magistrate judge erroneously issued this warrant, that it was overbought. And there isn't any indication that it's based on Thorne having owned the phone? No. Nor is it based on Thorne himself having held, used, dialed on the phone? Yes, it is based on him having used it. You think it is? Yes. And what would you point to for that? I would point to the affidavit itself, which says that the reason there's probable cause here is because he's a drug dealer. Drug dealers use phones. Therefore, any phone he used is likely to have information about his activities. And on the pizza delivery example, it seems a lot less likely that, you know, or the plumber coming in and out, if that person's phone were left. It seems like clearly there would not be probable cause to seize that phone if he just knew that that was, you know, if it had like a Domino's pizza phone case and it was like property of. Then this one, because, you know, an associate might not only lend their phone to this guy, Thorne, but it might be that Thorne is the boss and that they turn their phones into him for, you know, reasons of his determining that have to do with security. So that it doesn't really seem fair to say the officer should have treated this. Or I guess I'm asking you what makes it fair to say that the officers should have treated this the same way that they would have treated the left behind plumber or pizza delivery phone. I see my time is up. That's all right. We are somewhat lenient with time and useful arguments and we're finding your argument useful. Thank you. The reason they needed to treat this exactly as they would have treated the pizza delivery man or the plumber is because Mr. Hutchings is in exactly the same position as the pizza delivery man or the plumber. They have no reason at all to suspect that he's involved in any illegal activity. Zero. I guess the difference, as you point out usefully in your brief that they they had let him go. They, you know, they didn't have probable cause to arrest him before the phone was cracked. But they also don't have an affirmative explanation like they would with the plumber or the pizza delivery. That's that's innocent. Why he would be in an apartment and leave his phone where there's an indicted and fleeing felon. It's still even on the objective facts. It still seems a little different. Well, it's only different if you postulate that there's a reason to believe that Mr. Hutchings was involved in some illegal activity with him. And there's no reason for that. No basis for that. Thank you. Thank you, Your Honor. And we'll give you your rebuttal time. Thank you. And now we'll hear from Mr. Leonard's for the United States. Thank you, Your Honor. Good morning. May I please the court. The officers did not unreasonably execute the search warrant in this case. When they continue to review the cell bright report of the iPhones contents beyond the first page that had a indication that the owner's name was James's iPhone. That did not vitiate the probable cause that Linwood Thorn was using this phone while he was fleeing from the police drug dealer who had been caught with 44 kilograms of cocaine under circumstances where he had already switched phone numbers once during the course of the officer's investigation. And where the warrant made clear that drug dealers use multiple phones and often use phones registered in other people's names. It's also true that it's very easy to rename an iPhone. And so under the totality of the circumstances, the mere indication that this phone had been named James's iPhone by someone did not eliminate the probable cause. And officers did not unreasonably continue their review of the cell by report, notwithstanding seeing that information. Walk us through the doctrinal framework that applies here. It's not Leon because we're not looking at the. At the magistrate issuing judge, it does seem like it's in some ways analogous to the garrison Maryland versus garrison framework in some ways different and be helpful to hear your thoughts on on garrison and the related cases on which counsel for Mr. Hutchings relies. My understanding of the law in this area, your honor, is that. Under garrison, once officers in the course of executing a warrant. Uncover information that eliminates the probable cause that was the basis or the search they were performing. They need to stop their search and limit it to the places for which they still have probable cause. So, for example, in the Harmon case from 10th circuit, the warrant allowed the officers to search a house and a detached garage based on probable cause that both were being used as part of a drug deal operation. The officers went into the detached garage and ultimately discovered that the residents of that garage were had no involvement with the drug dealing operation from the main house. And the 10th circuit said that upon discovering that they were required to stop their search. In that case, they had already uncovered the incriminating evidence from the garage and there was no section 1983 violation. So that's my understanding of of the framework is that there is some requirement that officers upon discovering the lack of probable cause while executing a warrant that applies to an area stop the search. But here that that didn't occur when they merely read the name James's iPhone of the right report. And the defense does not argue that it occurred at some later point before the officer saw the incriminating evidence on Hutchings. What if the warrant affidavit had said that it was for the premise was that they were phones that were owned by and used? I know this is this case, but owned by and used by the defendant and identifiable as such. So that just like the strongest warrant affidavit to say when you see James, then you have reason to think it's not the phone that we're asking for. I guess it's this is relates to judge pans inquiry of Mr. and which is. If the warrant on its face doesn't say anything about the rationale, then how does Garrison even work? That might be I, I, I think that's more than of a good faith exception question as the 1st Circuit analysis and Pimentel, which is they had a warrant in that case that arguably on its face limited the officer's ability to search the 2nd floor. It turned out that the defendant lived unbeknownst to the officers on the 3rd floor and given the way the warrant had been written and ambiguities in it, that suggested that the officers were allowed to search. The defendant's residence, even though it was limited to the 2nd floor, the 1st circuit treated it as though yes, the search was not directly authorized by the warrant, but the officers nonetheless acted under a good faith belief that it did. And so you could, you could because there was ambiguity, the residents would seem to give them authority to go to the 3rd floor. The 2nd floor seems like a limited specification that excludes the 3rd floor. And because there's conflict there, they can go with residents. That is my understanding of the 1st circuit's reading. It's basically if I think, I think the evaluation is, was the search in fact, outside the scope of the warrant here? It was not on the face of warrant. And nothing the agents developed during the course of that search required them to stop and seek a new warrant. But if the search had not been authorized, or it's seemingly not authorized by the warrant, but it was not, there was nonetheless enough ambiguity on the face of the warrant, the officers can act in good faith to conduct the search that the warrant authorizes. So you would have us look at garrison and say, because it's the principal claim that's being raised by the defendant and ask whether the cracking officers here, or the officers looking at the, at the reports, knew or should have known that there was a risk. Because they were searching something that was erroneously included within the terms of the warrant. And you would say, well, they didn't see anything that seemed to exceed the terms of the warrant because the fact that the phone said James didn't render it not associated with Thorn, which was the premise of the, of the warrant. And therefore the inquiry just isn't even triggered. The easy way is, even if you assume that that means Thorn was using it, even if you think you read that warrant narrowly to only authorize a search of a phone to be used by Thorn. That there was, it didn't, learning that the owner name was James's iPhone didn't undermine probable cause that Thorn was using this phone for all the reasons the court has discussed. But even if that was true, as the court has noted, the warrant authorized the search of phones associated with Thorn. This was, as the district court found, this was certainly associated with him, found in this apartment while he was running from the police. He was likely only associating himself with people who were helping him commit his crimes at that time. And so it was even, so even if, so under those circumstances as well, it didn't fall outside the warrant. So, but the, the executing officers, based on Judge Pan's premise, don't know those facts, the narrowing facts that the guy whose phones these were, was on LAM, that he's likely only associating with people who are insiders to his criminal activities. Right. I mean, that sort of hurts and helps from your perspective that they're not versed in the underpinnings of the warrant. Is that, is that accurate? Is it accurate that they're, that none of the executing officers are versed in what was put in the warrant affidavit and then be that that in some ways makes your case less robust? No, Your Honor. In this case, Agents Ray and Migliara are the two agents who read the Selbright report past the first page. They were also both on the scene on Linden Avenue the day of Thorn's arrest. And so they both knew that Hutchings had been stopped. They both knew that Thorn was in this very small apartment found with four phones, two of which, including this iPhone, were found on a pile of his clothes. They had been the ones searching for him ever since they found 44 kilograms of cocaine in his residence. They had tracked him to Baltimore with the marshals. And so they, they, these officers knew the entire constellation of facts that we put forth in our brief. Isn't this case really distinguished, distinguishable from garrison in cases like it? And that in garrison, there wasn't really a question about the finding of probable cause. The question was whether the police officers were going to the right place that was identified in the warrant for which probable cause was found. And it seems to me that law enforcement officers do have to execute the warrant in the right place. Like there's, they have, they're making a judgment there that we're going to the right place. You can't give them a warrant for the second floor and they can't go to the 10th floor. Like, you know, so they are responsible for, for executing the warrant in the correct place. And the difference with this case is that the warrant said, search this particular cell phone. It's not a question of the probable cause being assigned to the right place. It's more, I think this is more squarely within what would be a good faith exception or anything. Because there was a judge who said, you can search this particular phone. And there wasn't discretion about, you know, where they were going to execute it. They were just executing what was, they were told to execute. So I don't want to fight what I think is a helpful question. But there are cases that say the officers have been given, have found probable cause that the officers can search place X. And in the course of executing the warrant, the officers learned that the probable cause they believe they had for place X no longer exists. And courts have said under garrison, you can't keep searching X, even though the warrant says you may. Because you know, the probable cause contained in the warrant has been initiated. That's, for example, the Harmon case. The warrant on its face said you can search. That district of Colorado case? You can search, you can keep tracking this car because you're probable cause to believe that. So is that a subjective inquiry? If these particular officers know, or is it what any objective officer know? I think it should be objective. But I can see many situations where the executing officer might not actually know. I think it's objective, your honor. The Supreme Court and garrison said no or have reason to know. And so have reason to know, I think is an objective inquiry. So then how can it matter that officers Ray and Migliara were involved the whole way through? Because don't we look at them as they're executing the warrant as if any officer in that position or no? We look at any officer in the position with the knowledge that they had? I don't know the answer to that, your honor. If it's a collective knowledge, I don't think it matters here. Because there was still probable cause to believe that Thorne was using. So I guess just stepping back, building on Judge Pan's query about how analogous this is to a premises. And you go to the third floor, you thought there was one apartment, there are two. I mean, cell phones are powerfully packed with information as the Supreme Court has eloquently pointed out. So there's a high likelihood that they're full of fruitful information in a situation like Thorne being found with cell phones. But there's also a high likelihood that if there are other people that live in the apartment and somebody's gone to school where the phones are not allowed, they've left it at home. And there's really a high risk where searches of cell phones found in the presence of suspects are cracked of intruding on deeply into other people's privacy. So to protect against that, would a warrant have to say, you know, a phone as to which there's no indicia that it was someone else's? No, and I think that is not presented here. I'm just I'm just thinking about the the rule that you ask for may seem sensible in this case. But, you know, authorizing based on generic law enforcement inferences, the cracking of phones found in the presence of criminal suspects is is a rule with legs. So whatever the court holds in this case should have no implication on the proprietor of issuing the warrant in the first place. We are taken for granted that this warrant was properly issued and contained probable cause. And the question then is armed with the document with those words on it. Did the officers reasonably execute that warrant under the facts of this case? So that isn't carte blanche for officers to obtain a warrant for every phone found in a house where a drug dealer lives. In fact, it has no implication whatsoever to that question because that's there. They must still have probable cause to believe that evidence of the drug dealers crimes would be found on that particular phone under the circumstances where it's found, given the officer's knowledge. And none of that's implicated here where we assume that the warrant was properly issued. The defense has not charged that. And the question is, having been authorized by a magistrate to search this phone and armed with that warrant, were the officers properly proceeding beyond the first page? And I think a lot of the court's questions go to the Supreme Court's recognition and garrison that executing a warrant is often difficult. It's not a straightforward issue. And so the court said, we allow latitude for honest mistakes made by officers in the difficult process of executing search warrants. And so the officers did everything right. They obtained a warrant for this phone. They were authorized by a magistrate judge. And courts tend not, in my, from the cases I've read, to nitpick that execution unless something they come across completely eliminates the probable cause on which the warrant was placed. If there are no further questions, we'd ask that the judgment be affirmed. Thank you. Thank you. Thank you, Your Honors. I'm going to pick up where Mr. Lenders left off. He said that the agents did everything right here. And he also said that the courts tend not to nitpick the execution of warrants except where the new information completely obliterates the probable cause showing. And I think, Your Honor, if you read the cases that we've cited in our brief, what the cases say is they don't require that the new information completely obliterate the finding of probable cause. They all speak in terms of the risk, every single one of them. They say that there is a risk that we are searching a place that is erroneously included within the warrant. That's exactly what Garrison said. Then you have to stop searching. And I understand that the searching, executing warrant may be difficult. But in this case, it really wasn't because the agents had the phone. They weren't going to lose the opportunity to search it. All they needed to do was go back to the magistrate judge and say, look, it's a little bit different than we told you. We still think there's a cause to search here, but it's your decision, not ours, because you're the magistrate. And it might have taken them a day to do that. I mean, I'm not sure what that request would have looked like. You go back to the magistrate judge and you say we want to search warrant because we have probable cause to believe there is incriminating information about Thorn on this phone, which is associated with him because it was found on a pile of his clothes in his own room. And I mean, if I were the magistrate judge, I would say I already gave you a warrant to search phones associated with Thorn found in his room on a pile of his clothes. I don't need to give you another warrant. Well, if I was a magistrate judge, I would say, well, the fact that this person named James was in the phone in the room immediately before is something that I'm interested in knowing about. Because because previously my assumption was that you were the magistrate judge. Once you found out that it said this is James's phone, you wouldn't give the warrant. I don't know if I would have or not. Well, then that's that contradicts what you just said, I think, because what you said is, you know, look, they weren't in a rush. They could have just come back to magistrate judge and got a warrant. And now you're saying they couldn't have gotten the warrant.  They've gotten the warrant. They might have. That's the magistrate. It's the decision whether there's probable causes the decision to be made by the magistrate judge with them to make a decision on the ground as non lawyers that you're saying a magistrate judge trained lawyer himself or herself. Meyer might not know the right answer to. I'm not sure I understand the question. You're saying that the question of whether a magistrate judge should issue a second warrant in this situation is maybe yes, maybe no. I think that's right. Okay. So that means it's close. It's close call. Now, I would argue in that case, if I were if I were opposing the warrant, I would argue that there isn't probable cause because look, this phone is left in the apartment, but we have every reason to point is it sounds like you think it's a close call. I do think it's a close call for a magistrate judge. Yes. And a police officer isn't even a trained lawyer. That may be true. But the point is that the officers here do that what they told the magistrate judge about why they should be able to search this phone was not right. It was not complete in a way that appears material to the validity or the applicability here of the warrant. Yes. So you I mean, isn't your position that if you were the magistrate judge, and you knew it was James's iPhone, you would deny it. I would I would. But your point is not that we would have to so hold, but that the importance is given that there are magistrate judges out there who might do this case the way you do that. That underscores the value of the neutral magistrate requirement. That's exactly correct. Thank you, Mr. Zinna. You were appointed by the court to represent the appellant in this case, and the court thanks you for your very helpful. Thank you, Your Honor.
judges: Pillard, Walker, Pan